**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 01-1340 JB

ANTHONY P. MARTINEZ,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Indictment, filed September 24, 2004 (Doc. 15). The Court held a hearing on this motion on December 3, 2004. The primary issues are whether the Court should dismiss the Indictment and whether a dismissal should be with or without prejudice. Because a period greater than 180 days has passed since both the United States District Court and the United States Attorney's office received Defendant Anthony P. Martinez' request for disposition, and because of the factors identified in Article IX, § 9 of the Interstate Agreement on Detainers Act ("IAD"), the Court will dismiss the Indictment without prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

Martinez has been previously convicted of the crime of commercial burglary, residential burglary and of escape from custody. See Transcript of Hearing at 31:13 - 32:25 (December 3, 2004)(hereinafter "Transcript"). The incident that most recently brought Martinez into state custody was a residential burglary in which a neighbor identified a male who had broken into an Albuquerque home and called the police. See Transcript at 31:23 - 32:10. The burglar then tried to elude police

officers who responded to the call. Police eventually arrested Martinez after a lengthy standoff in which an Albuquerque Police Department SWAT team was called. Martinez does not dispute these events. See Transcript at 31:23 - 32:10. The state then held Martinez in custody.

On September 20, 2001, the United States, through the Bureau of Alcohol, Tobacco and Firearms, filed a Criminal Complaint against the Defendant, Anthony P. Martinez, charging him with violations of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, and 18 U.S.C. § 922(j), Felon in Possession of a Stolen Firearm. See Doc. 1. On the same day, the United States District Court for the District of New Mexico issued an arrest warrant for Martinez, the United States Marshals Service ("U.S. Marshals") issued a detainer against unsentenced prisoner, and the detainer was served on the records clerk at the Bernalillo County Detention Center. On October 10, 2001, a federal grand jury returned a two-count indictment against Martinez, charging him with violations of the two statutes described in the Criminal Complaint. See Doc. 2. The Court issued another federal arrest warrant the next day. There was no further activity in Martinez' federal matter until January 21, 2003.

On April 29, 2002, the state district court for the Second Judicial District in Albuquerque, New Mexico sentenced Martinez to a term of one-year imprisonment in the custody of the State Department of Corrections. On September 25, 2002, the state district court for the Second Judicial District in Albuquerque, New Mexico sentenced Martinez to a prison term of four years in the custody of the State Department of Corrections. Martinez served his sentence at the Guadalupe County Correctional Facility in Santa Rosa, New Mexico.

On January 21, 2003, Louise Campos, Martinez' case manager at the Guadalupe County Correctional Facility, served Martinez a detainer against an unsentenced prisoner. See Transcript at 18:5-15. This detainer communicated to Martinez that the United States District Court for the

District of New Mexico had issued an arrest warrant for him. It indicated that he had not yet been sentenced on whatever matter was holding him in the Guadalupe County Correctional Facility and that therefore the Interstate Compact on Detainers did not apply to him. It also indicated that, should Martinez be sentenced while the detainer was in effect, he should notify the U.S. Marshals in Albuquerque, New Mexico at once. See Detainer Against Unsentenced Prisoner.

Martinez reports that he consulted with the case manager and requested that the case manager contact the U.S. Marshals and inform that office that he had been sentenced on all previously pending state criminal matters. Martinez reports that he told the case manager that he wanted to invoke his rights under the IAD to a speedy trial.

On January 24, 2003, the U.S. Marshals issued and lodged a detainer against sentenced prisoner and served it on Martinez at the Guadalupe County Correctional Facility. See Detainer Against Sentenced Prisoner. Martinez' case manager served upon him the detainer against a sentenced prisoner. Specifically, she served U.S. Marshal Form 17 ("USM - 17") on Martinez for "detainer against sentenced prisoner." This document indicated that the United States District Court for the District of New Mexico had issued an arrest warrant for Martinez charging him with the offense of knowingly possessing a stolen firearm while being a convicted felon. It further provided him with information concerning his rights under the IDA.

Martinez told the case manager that he wanted to invoke his rights to a speedy trial. The caseworker informed him that he needed to read and sign the USM-17. See Transcript at 20:2-5. She asked him to fill out a form included with the detainer paperwork. See id. Martinez read and signed the second page of that form and dated it, believing that, by doing so, he was invoking his speedy trial rights. See id. at 19:18-22. Martinez did not, however, make it clear whether he was

requesting a speedy trial because he did not circle the language indicating such.

Martinez also requested that the caseworker make sure that the U.S. Marshals knew that he wanted to invoke his right to a speedy trial. See id. at 20:2-5. The case manager sent by facsimile transmission the information to the U.S. Marshals. See id. Martinez reports that it was his belief that this exchange with the case manager invoked his right to a speedy trial under the IAD.

The caseworker sent by facsimile transmission a separate document to the two-page form that Martinez had signed, specifically notifying the U.S. Marshals that Martinez wanted "to get a speedy trial." See id. The caseworker also called the U.S. Marshals and verbally informed that office of Martinez' request. Martinez did not receive a response from the U.S. Marshals regarding case manager's facsimile transmission requesting a speedy trial.

Martinez acknowledged the detainer's receipt on or about January 27, 2003, but it is unclear whether he was requesting a speedy trial in that document because he did not indicate whether he was requesting a speedy trial. Martinez had no further communication from the facility regarding his request to assert his speedy trial rights under the IAD.

Martinez reports that some months later, still in 2003, he wrote to the United States District Court requesting that he receive a speedy trial. He did not receive a reply to that letter. At the hearing on this motion, counsel for Martinez represented to the Court that no record of this correspondence is available. See id. at 14:25 - 15:9.

In January of 2004, Martinez contacted the Federal Public Defender's Office and requested a lawyer be appointed to represent and to help him assert his speedy trial rights under the IAD. The Federal Public Defender's Office informed Martinez that appointment of counsel was solely within the United States District Court's power and that the court generally does not appoint counsel until

a person is in federal custody. The Federal Public Defender's Office also gave him information as to how he might contact the Court and the United States Attorney's Office himself.

On January 26, 2004, Martinez also sent to the United States District Court, by way of certified mail, a pleading captioned Demand for Speedy Trial. In this document, which included the proper case number under which his Indictment was filed, Martinez communicated to the District Court that he wished to exercise his right under the IAD for a speedy trial. The Demand for Speedy Trial was filed of record on February 3, 2004. See Demand for Speedy Trial, filed February 3, 2004 (Doc. 3).

On January 26, 2004, Martinez sent a document, by way of certified mail, to Assistant United States Attorney Roberto Ortega at the address of the United States Attorney's Office. The United States received the written demand on or about January 27, 2004. The document sent to Mr. Ortega was similar to the document sent to the United States District Court in that it included the proper case number and indicated he wished to invoke his rights under the Interstate Agreement on Detainers and indicated his return address at the facility at which he was serving his state sentence.

There was no further action in this matter until August 12, 2004, when the United States Marshal arrested Martinez based upon a detainer. Martinez was promptly brought to federal court for his arraignment, which occurred August 16, 2004. By order of the Honorable Robert Scott, United States Magistrate Judge, Martinez was detained on the same day. Martinez obtained counsel and filed this motion on September 24, 2004.

**INTERSTATE AGREEMENT ON DETAINERS ACT, 18 U.S.C. APP. § 2**

The Interstate Agreement on Detainers Act, 18 U.S.C. App. § 2, prescribes procedures for transferring a prisoner from a state or territory of incarceration to a jurisdiction seeking to prosecute

him. The United States is a party to the IAD. The agreement binds the United States when it activates its provision by filing a detainer against a state prisoner. See United States v. Mauro, 436 U.S. 340, 349, 354 (1978).

Article III of the Interstate Agreement on Detainers Act provides in relevant part:

> (a)Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party's state any untried Indictment, Information, or Complaint on the basis of which a detainer has been lodged against a prisoner, he should be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer an appropriate court of the prosecuting officer's jurisdiction, written notice of the place of his imprisonment and his request for final disposition to be made of the Indictment, Information, or Complaint . . . .
>
> (b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

18 U.S.C. App. § 2, Art. III. The operative language from this section is when the prisoner "shall have caused to be delivered to the prosecuting officer and the appropriate court" a request for final disposition. In Fex v. Michigan, 507 U.S. 43 (1993), the Supreme Court of the United States, in an opinion by Justice Scalia, held that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." 507 U.S. at 52. In a dissenting opinion, Justice Blackmun relied upon the language "**he** shall have caused" to indicate that the period begins when the prisoner's actions are complete: when he transmits his request to the warden. Id. at 53 (emphasis added).

Article V(c) of the IAD provides:

> [I]n the event that an action on the Indictment, Information, or Complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided for in Article 3 . . . the appropriate court of jurisdiction where the Indictment, Information, or Complaint has been pending shall enter an order dismissing the same with prejudice and any detainer based there on shall cease to be of any force or effect.

18 U.S.C. App. § 2, Art. V(c). Article IX, § 9 of the IAD, however, indicates that when the United States brings an indictment, information or complaint, a dismissal under Article III may be with our without prejudice:

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State -- (1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice. . . .

18 U.S.C. App. § 2, Art. IX, § 9. Article II provides the definitions to interpret the IAD's terms. "Receiving state shall mean the state in which the trial is to be had on an indictment, information or complaint pursuant to Article III or Article IV hereof." 18 U.S.C. App. § 2, Art. II(c).

Both the United States and Martinez rely on a case from the United States Court of Appeals for the Ninth Circuit decided before Fex v. Michigan. In United States v. Reed, 910 F.2d 621 (9th Cir. 1990), the defendant notified the jailor who had served him a notice that a federal detainer had been lodged against him his decision to invoke his right to a speedy trial. See id. at 623. The jailor gave the defendant a document to execute and informed him that the document would invoke his right to a speedy trial. See id. The jailor's instructions, however, were erroneous, and he had not made a formal request for speedy trial. See id. The Ninth Circuit noted that, "a prisoner must strictly comply with the requirements for requesting final disposition of the charges." Id. at 624. But the

Ninth Circuit went on to hold that the prisoner's indictment had to be dismissed for violation of the IAD even though the defendant did not adequately invoke his speedy trial rights because the jailor, who did not provide him with the correct form to make the request, misled him. See id. at 626.

In United States v. Johnson, 196 F.3d 1000 (9th Cir. 1999), the Ninth Circuit indicated that Fex v. Michigan changed the rule stated in United States v. Reed. The Ninth Circuit explained:

> When we first visited this issue, we held that a prisoner has complied with his obligation under the IAD by signing the Form USM-17 and giving it to the correctional officials. *U.S. v. Reed*, 910 F.2d 621, 625 (9th Cir. 1990). However, since we decided *Reed*, the Supreme Court, in *Fex v. Michigan*, 507 U.S. 43, 122 L. Ed. 2d 406, 113 S. Ct. 1085 (1993), has held that the 180-day period does not start until the speedy trial request is actually delivered to the court and the prosecutor.

United States v. Johnson, 196 F.3d at 1002. Thus, Fex v. Michigan indicates that United States v. Reed is no longer good law.

## ANALYSIS

Before the Court decides that a dismissal is appropriate, it must find that the Indictment was not brought to trial within the 180-day period after Martinez asked for a speedy trial and that no continuances have been granted. In such a case, a dismissal would be the appropriate remedy. See United States v. Mauro, 436 U.S. 340, 351-53 (1978). Because the Court finds that Martinez properly complied with the Act's procedural obligations, the 180-day period has expired without a trial, but dismissal without prejudice is appropriate.

### I. DISMISSAL

There are questions when Martinez sent his request for speedy trial and also whether he delivered a copy of such to the prison warden. And there is some ambiguity whether Martinez complied with his obligations under the IAD when he acknowledged the second detainer was served

on him on or about January 27, 2003. The Court need not, however, determine all the factual issues that the motion raises to address the questions before the Court.

First, the United States at the hearing conceded that Martinez had at some point complied with the IAD's requirements for invoking his speedy trial rights and that he had done so at least 180 days before he was brought to trial. See id. at 6:1-10. The Court thus need not decide whether Martinez' communications with his caseworker satisfied his obligation to notify the warden or other officials having custody of him. While it is true that, if Martinez did not comply with this requirement under the IAD, there is no clear assurance that he complied with all the procedural obligations that the Act required, Justice Scalia's holding and language in Fex v. Michigan indicates that the 180-day limitation period is invoked when the defendant contacts the United States Attorney's Office and the Court. The requirement that the defendant contact the warden is to assist the defendant in making certain that he contacts the United States and the federal court.

While it is not necessary to determine when Martinez contacted the United States Attorney's Office and the Court for the Court to decide to dismiss the Indictment, it is helpful to make that determination to decide whether to dismiss the Indictment with or without prejudice. The record does not establish that Martinez notified both the United States Attorney's Office and the Court until early 2004. Fex v. Michigan requires both, and the Supreme Court's bright line rule does not appear to be consistent with Martinez' efforts, as was the dissent in Fex v. Michigan or the Ninth Circuit in United States v. Reed. The focus is on when Martinez notified both the United States Attorney's Office and the Court. Martinez did not notify both until early 2004.

Martinez' Demand for Speedy Trial was filed with this Court on February 3, 2004. The United States received the written demand on or about January 27, 2004. A period greater than 180

days has passed since both the United States District Court and the United States Attorney's Office received Martinez' request for disposition. As a result, the Court will dismiss the Indictment pending against Martinez under the terms of the IAD.

## II. DISMISSAL SHOULD BE WITHOUT PREJUDICE.

Martinez urges the Court to apply Article V(c) of the IAD, which essentially provides that, if an indictment is not brought to trial within the period provided in Article III, then the appropriate remedy is dismissal with prejudice. Contrary to Martinez' assertion, however, a violation of the 180-day limitations period does not automatically result in a dismissal with prejudice. The language in Article IX, § 9 is clear and unambiguous: Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving state, a dismiss order may be with or without prejudice.

Because the United States is the receiving state, the Court must make a determination whether to dismiss with or without prejudice. In making this determination, the Court must consider "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." 18 U.S.C. App. § 2, Art IX, § 9.

### A. SERIOUSNESS OF THE OFFENSE.

The first factor is the seriousness of the offense. In United States v. Zfaty, 44 F. Supp. 2d 588 (S.D.N.Y. 1999), the Honorable Barrington D. Parker, Jr., United States District Judge, dismissed with prejudice a case based on violation of the IAD. In that case, the defendant was charged with illegal reentry after deportation, a crime with an offense level of 12 under the United States Sentencing Guidelines ("U.S.S.G."). See United States v. Zfaty, 44 F. Supp. 2d at 592. Judge

Parker concluded that illegal reentry was "not among the most egregious crimes that come into federal court" and determined the case should be dismissed with prejudice.  Id.

In contrast, Martinez is charged with violations of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, and 18 U.S.C. § 922(j), Felon in Possession of a Stolen Firearm.  Based on the limited facts before the Court, it appears that the offense level for these crimes will be somewhere in the range of 20 to 22.  The crimes will likely be Zone D offenses, which among the federal offenses are the most serious offenses.  The crimes themselves, without taking into account Martinez' criminal history, are among the more serious federal offenses.

All felons are not similarly situated, and to determine the seriousness of the felon in possession charge here, it is also appropriate for the Court to look at Martinez' prior felonies.  The crimes of commercial burglary and of escape from custody are also serious crimes.  Federal law may consider one or both of them to be "crimes of violence."  Taylor v. United States, 495 U.S. 575, 585 (1990)(defining commercial burglary as a violent felony for sentencing purposes); United States v. Blahowski, 324 F.3d 592, 594-95 (8th Cir. 2003)(affirming United States v. Haskell); United States v. Haskell, 76 F.3d 902, 906 (8th Cir. 1996)(finding that commercial burglary is a crime of violence for purposes of applying U.S.S.G § 4B1.2 of the Sentencing Guidelines); United States v. Amos, 984 F.2d 1067, 1070-71 (10th Cir. 1993).

The United States argues that because of Martinez' prior convictions for burglary and escape, he is likely facing career criminal status should the Court convict him in the present case.  The Court need not on this motion decide whether Martinez will face career criminal status.  It is sufficient for the Court to note that the present offense is a serious one that compounds an already lengthy and serious criminal history.

Accordingly, this factor supports a dismissal without prejudice. If Martinez committed the crimes with which he is charged, these offenses should not go unpunished. Unlike in United States v. Zfaty, when the defendant likely was immediately deported, here, if the Court dismisses with prejudice, there will be no consequences for a serious offense.

**B. FACTS AND CIRCUMSTANCES THAT LED TO DISMISSAL.**

The second factor for the Court to examine is the facts and circumstances that led to dismissal.

While some of the dates are not precisely established, the parties do not dispute the dates in this matter. Martinez was serving a four-year prison sentence for two consolidated commercial burglary convictions when the detainer was initially served. The United States' problem here is that it did not follow its usual practice of waiting until close to the end of a state prisoner's sentence before sending a detainer. It served Martinez too early, starting the clock. See Transcript at 42:17-21. But because Martinez was serving that state prison sentence, the United States did not see a need to bring him to trial in the present case.

While the Court does not doubt that Martinez gave specific and written requests to his caseworker that he wanted to invoke his speedy trial rights, the Court has already found that the activity in 2003 did not, under Fex v. Michigan, trigger the 180-day period. Hence, while the Court can assume that Martinez made a good faith effort to comply with the IAD's provisions in 2003, those efforts are largely irrelevant to the determination here. Here, the focus should more properly be on whether the United States acted in good faith and why it violated the IAD.

Once he finished his state sentence, Martinez was released from state custody and placed into federal custody, and was presented for arraignment approximately thirteen days after a trial should

have commenced under the 180-day limitations. The United States' violation of the IAD was unintentional, and there is no evidence to suggest that the United States intentionally neglected or otherwise intentionally delayed the disposition of this matter. The delay was not egregious.

**C. IMPACT OF RE-PROSECUTION ON THE ADMINISTRATION OF THE AGREEMENT ON DETAINERS AND ON THE ADMINISTRATION OF JUSTICE.**

Finally, the Court must examine the impact of re-prosecution on the administration of the agreement on detainers and on the administration of justice. Martinez has apparently completed his state prison sentence and thus prosecution on the federal charge will not adversely impact the administration of the IAD. Furthermore, prosecution on the federal charge would not adversely affect the administration of justice. While the sentence of dismissal without prejudice is not as much as Martinez would like, Congress has required the Court to weigh the circumstances before denying with prejudice.

Justice will be served by a dismissal without prejudice because Martinez has a serious criminal history for violent charges. As a result of his continuing criminal conduct, in this case he was charged with two separate federal firearms charges, which should not go unpunished if they are true. While the Court has determined that dismissal is warranted, the Court believes that, in considering all these factors and pursuant to Article IX, § 9 of the IAD, the Court should issue a dismissal without prejudice. The United States will likely seek a new indictment on the same charges. Martinez will remain in custody until this order is issued.

**IT IS ORDERED** that the Defendant's Motion to Dismiss the Indictment is granted in part. The Court will dismiss the Indictment without prejudice.

                                                                           UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
United States Attorney for the
District of New Mexico
Roberto D. Ortega
Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Thomas B. Jameson
Assistant Federal Public Defender
Albuquerque, New Mexico

*Attorney for the Defendant*